UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL STEPHEN McINTOSH,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>Defendant. | No. EDCV 17-1654 AGR<br><br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff filed this action on August 16, 2017. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 12, 13.) On June 5, 2018, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court affirms the decision of the Commissioner.

# I.
# PROCEDURAL BACKGROUND

Plaintiff filed an application for disability insurance benefits on February 11, 2014, and alleged an onset date of December 31, 2012. Administrative Record ("AR") 22. The application was denied initially and on reconsideration. AR 22, 63, 87. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). On May 5, 2016, the ALJ conducted a hearing at which Plaintiff and a vocational expert ("VE") testified. AR 34-62. On May 17, 2016, the ALJ issued a decision denying benefits. AR 19-29. On June 20, 2017, the Appeals Council denied review. AR 1-6. This action followed.

# II.
# STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

# III.
# DISCUSSION

## A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (citation and quotation marks omitted).

## B. The ALJ's Findings

The ALJ found that Plaintiff met the insured status requirements through December 31, 2014. AR 24. Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Plaintiff had the severe impairments of obesity, mild osteoarthritis of the bilateral hips, and mild osteoarthritis of the left knee. AR 24.

The ALJ found that, through the date last insured, Plaintiff had the residual functional capacity ("RFC") to perform a range of light work. He could lift/carry up to 20 pounds occasionally and up to 10 pounds frequently; sit, stand or walk for six hours in an eight-hour workday with normal breaks; occasionally climb ramps or stairs, or use ladders, ropes or scaffolds; and occasionally bend, stoop, kneel, crouch or crawl. He was precluded from concentrated exposure to temperature extremes and workplace hazards such as dangerous moving machinery and unprotected heights. AR 26.

---

[1] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

Plaintiff could perform his past relevant work as a general services clerk and map compiler. AR 28-29.

### C. Medical Source Opinions

Plaintiff argues that the ALJ failed to consider properly the opinion of his treating physicians.

An opinion of a treating physician is given more weight than the opinion of non-treating physicians. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). To reject an uncontradicted opinion of a medically acceptable treating source, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Orn*, 495 F.3d at 632 (citations and quotation marks omitted). "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation marks omitted).

Although Plaintiff has shown evidence to support his diagnoses, "[t]he mere existence of an impairment is insufficient proof of a disability." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993). "'A claimant bears the burden of proving that an impairment is disabling.'" *Id.* (citation omitted).

The ALJ gave little weight to a Diabetes Mellitus Medical Source Statement form completed by Dr. Rubalcava dated March 5, 2014. AR 28, 301-04. Dr. Rubalcava indicated that Plaintiff's condition was stable. AR 301. Plaintiff could walk three blocks, sit for 45 minutes at a time, stand for 20 minutes at a time, and sit for a total of four hours in an eight-hour workday. Plaintiff required a sit/stand option, and should be able to walk around for five minutes every hour. Plaintiff should elevate his legs three feet for 20% of the workday in a sedentary job. AR 302. Plaintiff could frequently lift ten

4

pounds and rarely lift 20 pounds. He could occasionally twist, bend, crouch and climb stairs, and rarely climb ladders. AR 303. He would likely be off task 25% of the workday and absent four days per month, and would require low stress work. AR 304.

The ALJ gave little weight to Dr. Rubalcava's opinion because it was inconsistent with both the objective medical evidence of Plaintiff's functional capability and Plaintiff's subjective reports to his physicians. AR 28. An ALJ may properly discount a treating physician's opinion that is inconsistent with the objective medical evidence or the claimant's reports to physicians. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

Plaintiff has not shown any error in the ALJ's interpretation of the treatment records during the relevant period prior to the date last insured. The ALJ found that treatment records between the alleged onset date and the date last insured "primarily reflect[ed] routine care and document[ed] few consistently reported or observed functional limitations." *Id.* The conservative treatment was generally effective in mitigating Plaintiff's chronic and acute conditions. *Id.*

The ALJ found that the records during the relevant period were "relatively limited and do not reflect a disabling degree of functional restriction." AR 26. Imaging showed mild degenerative changes of the bilateral hip joints in April 2012, and mild degenerative changes of the lumbar spine at L3-S1 that were not significantly changed since the prior imaging in 2010. AR 26, 341-42. Imaging of the left knee in October 2013 showed mild osteoarthritic changes and mild joint space narrowing. AR 27, 307. X-rays of the chest and left foot were normal. AR 314-15. Studies performed due to Plaintiff's complaint of chest pain were normal.[2] AR 326-28. An ultrasound of the renal/bladder confirmed medical renal disease. AR 370.

---

[2] Plaintiff reported chest pain of 2/10. The pain was continuous but "has not particularly bothered him." He did not have chest pain at the time of the consultation. AR 331.

In February 2013, Plaintiff reported that he felt well with minor complaints. AR 268. He had fatigue, headache, chest pain on exertion, back pain, anxiety and depression. His physical examination was normal and he had full range of motion in his hips but pain when he extended his back. AR 269. His headache improved with nasal CPAP. AR 268. Dr. Rubalcava treated him with medication for diabetes, hypertension and sleep apnea. AR 270.

In May 2013, Plaintiff complained of left foot pain, lumps, swelling and numbness for the past two days, made worse by weight bearing, walking and standing. AR 260. Plaintiff was treated with medication. AR 261.

In July 2013, Plaintiff complained of moderate fatigue and extremity pain. Home glucose levels were 100 mg/dl. AR 257. Plaintiff had full range of motion of his hips, but pain when he extends his back. Plaintiff was treated with medication. AR 258. Plaintiff reported to Dr. Patel that he was stressed due to his home situation and anxiety. AR 371. His physical examination was normal but his lab results showed elevated glucose and creatinine. AR 371-72. Plaintiff had stopped taking ibuprofen for the past few months and likely had chronic analgesic nephropathy (less likely to be diabetic nephropathy). Dr. Patel recommended avoiding NSAIDS. AR 372. His PTH was within normal range. Dr. Patel recommended adjustment to his medications. AR 373.

In September 2013, Plaintiff complained of knee pain made worse with weight bearing, walking, running, kneeling and squatting. AR 255. Examination of the left knee revealed no swelling or edema, no tenderness to palpation, no warmth, normal strength and tone, normal range of motion and no instability. AR 256, 363.

In October 2013, Plaintiff reported a higher glucose level. AR 253. Plaintiff was started on a different medication. AR 254.

On October 18, 2013, Plaintiff reported left knee pain (dull ache, nonradiating) to Dr. Swanson that was very recently trending toward improvement in function and pain level. The left knee had mild effusion and no laxity in any plane. His gait was mildly

antalgic. Plaintiff was in no acute distress and had full range of motion in hips ankles with no tenderness, good power, and normal stability. Plaintiff denied inflammatory poly arthropathy. AR 242.

In November 2013, Plaintiff reported feeling well with no complaints and no side effects from medication. AR 248. Plaintiff felt depressed. Plaintiff had full range of motion in his hips but pain when he extended his back. Dr. Rubalcava recommended that Plaintiff increase his physical activity. AR 249.

In January 2014, Plaintiff reported that overall he was doing well. He had no shortness of breath or palpitations, and review of systems was negative. AR 362. In February 2014, Plaintiff reported feeling well with minor complaints, including fatigue, headache, backache, joint pain and joint stiffness. AR 246-47. Dr. Rubalcava noted full range of motion of hips, but pain when Plaintiff extends his back. Plaintiff was treated with medication and physical therapy. AR 247. In April 2014, Plaintiff had no new complaints and review of systems was negative. It was recommended that Plaintiff increase activity and exercise as tolerated. AR 361. Plaintiff reported pain of 2-3/10. AR 386.

In May 2014, Plaintiff presented with osteoarthritis with a pain level of 5/10. AR 378. Dr. Rubalcava diagnosed arthralgia and degenerative joint disease of the hip. AR 375. Plaintiff was referred for testing and to rheumatology. AR 377, 379. In August 2014, Plaintiff reported shoulder pain for five days. AR 519. Examination revealed no tenderness to palpation, no pain, no swelling, no erythema, normal range of motion, and normal strength and tone. AR 520. In December 2014, Plaintiff was being treated with medications for arthralgia and low back pain. AR 517-18.

Plaintiff contends that the examining physician, Dr. Bernabe, has since been terminated and has been the subject of malpractice suits according to a newspaper article. This argument is unavailing because (1) the ALJ did not adopt Dr. Bernabe's opinion that Plaintiff was capable of medium work; (2) Plaintiff's argument does not undermine the ALJ's articulated reasons for discounting Dr. Rubalcava's opinion; and

(3) Plaintiff's contentions about Dr. Bernabe are not in the record or supported by evidence. Plaintiff has not shown error.

Plaintiff further argues that the ALJ erred in failing to include, in his hypothetical to the vocational expert, his finding that Plaintiff had a mild impairment in concentration, persistence and pace. Plaintiff cites the unpublished decision in *Hutton v. Astrue*, 491 Fed. Appx. 850 (2012). In *Hutton*, the Ninth Circuit concluded that the ALJ "excluded [claimant's] PTSD from consideration. This exclusion was legal error. To determine [claimant's] RFC properly, the ALJ was required to consider [claimant's] physical impairments and the 'mild' limitations his PTSD caused with concentration, persistence, or pace." *Id.* at 850-51.

*Hutton* is distinguishable. In this case, unlike *Hutton*, the ALJ expressly considered Plaintiff's mental impairment in formulating his residual functional capacity. AR 25. The ALJ relied on the medical evidence during the relevant period and Plaintiff's activities of daily living to conclude that Plaintiff had no more than mild limitation in any area of work-related mental functioning. Plaintiff had received no treatment other than medication "which appears effective in controlling his symptoms." *Id.* The ALJ concluded that Plaintiff's mental impairment was nonsevere and had "no more than minimal mental restriction." *Id.* "Because Plaintiff's mental impairment was not severe and did not cause any significant impairment, the ALJ was not required to include it in Plaintiff's RFC." *Banks v. Berryhill*, 2018 U.S. Dist. LEXIS 56134, *14 (C.D. Cal. Apr. 2, 2018) (distinguishing *Hutton*; collecting cases); *Aranda v. Berryhill*, 2017 U.S. Dist. LEXIS 125455, *14-*15 (C.D. Cal. Aug. 8, 2017) (distinguishing *Hutton*; collecting cases); *Sanchez v. Colvin*, 2016 U.S. Dist. LEXIS 166293, *18-*19 (C.D. Cal. Dec. 1, 2016) (distinguishing *Hutton*); *Medlock v. Colvin*, 2016 U.S. Dist. LEXIS 145692, *13-*14 (C.D. Cal. Oct. 20, 2016) (distinguishing *Hutton*). Plaintiff has not shown error.

**D.    Credibility**

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter v.*

*Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). At step one, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. AR 26.

Second, when an ALJ concludes that a claimant is not malingering and has satisfied the first step, "the ALJ may 'reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation omitted); *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014). "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter*, 806 F.3d at 493 (citation omitted). "'General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.'" *Id.* (citation omitted).

The ALJ determined that Plaintiff's statements were inconsistent with the objective medical evidence and with Plaintiff's reports to his physicians. The ALJ also relied on Plaintiff's conservative treatment. AR 26-27.

The ALJ's reasons are supported by substantial evidence. "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The ALJ's finding regarding the objective medical evidence during the relevant period is supported by substantial evidence for the reasons described in the preceding section. The ALJ's reliance on Plaintiff's reports to his physicians of minor complaints and relatively low pain levels is also supported by substantial evidence for

the reasons described in the preceding section.  Plaintiff does not dispute that he received routine, conservative treatment during the relevant period.

Plaintiff's hearing took place in May 2016, almost one and half years after the date last insured, and his testimony generally focused on that time frame.  AR 44-52.  Plaintiff noted that his pain had "actually gotten worse."  AR 48.  The ALJ questioned Plaintiff about the records from Dr. Rubalcava, a treating physician up to 2014, reflecting that Plaintiff generally reported feeling well with minor complaints.  Plaintiff's response was that it was probably a good day, and he has good days and not good days.  AR 52-53.  As discussed in the preceding section, however, the treating medical records during the relevant time frame contain Plaintiff's reports about his complaints and pain levels over a two-year period in 2013-2014.  The ALJ could reasonably rely on the longitudinal reports during the relevant time frame.  Plaintiff has not shown error.

### E. Past Relevant Work

The ALJ determined that Plaintiff could perform his past relevant work as a general services clerk and map compiler.  AR 28-29.

"At step four of the sequential analysis, the claimant has the burden to prove that he cannot perform his prior relevant work 'either as actually performed or as generally performed in the national economy.'"  *Carmickle v. Comm'r*, 533 F.3d 1155, 1166 (9th Cir. 2008) (citation omitted).  "Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion."  *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001).

Plaintiff argues that the vocational expert mis-identified the map compiler job.  This objection was not raised before the agency and arguably has been waived.  *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2018) ("when a claimant fails entirely to challenge a vocational expert's job numbers during administrative proceedings before the agency, the claimant forfeits such a challenge on appeal, at least when that claimant is represented by counsel"); *Vizcarra v. Berryhill*, 2018 U.S. Dist. LEXIS

58576, *8 (C.D. Cal. Apr. 5, 2018) (applying *Shaibi* to represented claimant's failure to challenge vocational expert's testimony about job skill level before agency).

Assuming that the argument is not waived, any error would be harmless because the ALJ also found that Plaintiff could perform his past relevant work as a general services clerk. *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (error is harmless if it is "'inconsequential to the ultimate nondisability determination'") (citation omitted); *Molina v. Colvin*, 2013 U.S. Dist. LEXIS 135882, *12 (C.D. Cal. Sept. 16, 2013) ("Even assuming the ALJ erred in finding that Plaintiff's work as a tagger constituted past relevant work, any error was harmless, as the ALJ made the alternative finding at step four that Plaintiff could return to her past relevant work as a sales clerk."). Plaintiff argues that he cannot return to the general services clerk job. However, his argument is predicated on the contention that the ALJ erred in his residual functional capacity assessment and the court has already found that the ALJ's finding was supported by substantial evidence.

IV.

ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner is affirmed.

DATED: June 29, 2018

_____
ALICIA G. ROSENBERG
United States Magistrate Judge